**ALASKA GENERAL ALARM, INC., Petitioner,**

v.

**GRINNELL, a Delaware corporation, Respondent.**

**No. S–8318.**

Supreme Court of Alaska.

April 21, 2000.

---

Patrick J. McKay and Michael R. Wirschem, Law Offices of Patrick J. McKay, and

A. Robert Hahn, Jr., Anchorage, for Petitioner.

Robert P. Blasco, Robertson, Monagle & Eastaugh, P.C., Juneau, for Respondent.

Kenneth M. Gutsch, Richmond & Quinn, Anchorage, for Amicus Curiae The Defense Counsel of Alaska.

Mauri Long and Kristen D. Pettersen, Dillon & Findley, P.C., Anchorage, for Amicus Curiae Alaska Academy of Trial Lawyers.

Raymond M. Funk, Assistant Attorney General, Fairbanks, and Bruce M. Botelho, Attorney General, Juneau, for Amicus Curiae State of Alaska.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, and BRYNER, Justices.

## OPINION

BRYNER, Justice.

### I. INTRODUCTION

The superior court held that a third-party defendant sued for apportionment of fault under AS 09.17.080 after the statute of limitations on the plaintiff's underlying personal injury claim had run may nonetheless be liable to the plaintiff for money damages. Because we find that the statute of limitations for tort actions does not apply to claims for equitable apportionment, we affirm.

### II. FACTS AND PROCEEDINGS

On June 4, 1993, Cheryl McIntire, Yvonne Dann, and Morgan Coggswell (hereinafter "McIntire") were allegedly injured when halon was discharged from a fire protection system in the Boney Courthouse in Anchorage. At the time, technicians from Grinnell Corporation and Alaska General Alarm, Inc., were examining the system to detect the cause of recent false alarms.

McIntire sued Grinnell on December 2, 1994. Grinnell answered the complaint on January 19, 1996, and, on August 13, 1996, filed a third-party complaint against Alaska General Alarm, claiming that it was responsible in whole or part for any injuries sustained by McIntire. Alaska General Alarm answered and filed a motion for partial sum-

mary judgment, asserting the defense of statute of limitations because the third-party complaint was filed more than two years after the halon incident.[1] The superior court denied the motion, holding that the statute of limitations did not bar a third-party complaint for apportionment of damages. Alaska General Alarm petitioned for review, and we granted the petition.[2]

## III. DISCUSSION

### A. Standard of Review

■ The sole issue presented is whether the superior court erred in holding that a third-party defendant sued for apportionment of fault under AS 09.17.080 after the statute of limitations on the underlying claim had run may still be liable to the plaintiff for money damages. In resolving questions of statutory construction, this court applies its independent judgment[3] and adopts "the rule of law that is most persuasive in light of precedent, reason, and policy."[4]

### B. Background of AS 09.17.080

Before 1986, Alaska followed the rule of joint and several liability, which allowed a plaintiff to recover all damages from one named defendant; that defendant could then seek reimbursement from other at-fault parties by filing an action for contribution within one year of judgment.[5] The statute at issue in this case repealed that joint and several liability scheme; enacted by voter initiative,[6] AS 09.17.080 provided that a plaintiff can recover from each party only in accordance with that party's percentage of fault.[7]

1. AS 09.10.070 provides, in relevant part, that an action for personal injuries must be "commenced within two years of the accrual of the cause of action."

2. On January 20, 2000, following full briefing and submission of the case for decision, Alaska General Alarm notified this court that the parties had entered into a settlement agreement. Alaska General Alarm nevertheless moved for issuance of an opinion resolving this case, asserting that review continues to be appropriate under the public interest exception to the mootness doctrine. Counsel for Alaska General Alarm attests that the issue presented in this case has arisen in more than 10 other superior court cases and has generated inconsistent decisions in the superior court. Amicus Curiae Defense Counsel of Alaska subsequently joined in Alaska General Alarm's motion, urging that

> [t]he court's advisory opinion would resolve the split of authority within the trial courts as to the application of the statute of limitation to third-party defendants impleaded after the statute of limitations expires. The issue has generated much litigation, which may be avoided in the future with an advisory opinion from this court.

We find these arguments persuasive. In addition, we note that, after granting the petition for review in the present case, we granted another petition seeking review of a similar ruling in *Arctic Cat v. Alaska Cycle Center*, No. S–8820 (Alaska, November 16, 1998) (order granting petition for review). But before the parties filed their briefs in *Arctic Cat*, the case settled and we dismissed it as moot. *See Arctic Cat v. Alaska Cycle Ctr.*, No. S–8820 (May 5, 1999) (order dismissing appeal). This experience helps persuade us that the issue presented may continue to evade review.

Because the issue is one of considerable public importance, has arisen repeatedly, and has led to conflicting rulings among the superior courts, we believe that immediate review is warranted despite the parties' settlement agreement. *See, e.g., State, CSED v. A.H.*, 880 P.2d 1048, 1049–50 (Alaska 1994).

3. *See Progressive Ins. Co. v. Simmons*, 953 P.2d 510, 512 (Alaska 1998); *Van Alfen v. Van Alfen*, 909 P.2d 1075, 1077 n. 4 (Alaska 1996).

4. *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

5. *See* former AS 09.16.010–.060 (1970).

6. *See* 1988 Election Pamphlet for Initiative No. 87TOR2, § 1, prepared pursuant to AS 15.58.010. The ballot initiative amended the Limitations on Civil Liability Act, former AS 09.17.010–.900 (1986), a legislative effort at tort reform that had retained joint and several liability.

7. McIntire's cause of action accrued in 1993 and is governed by former AS 09.17.080 (1989), which provided:

> Apportionment of damages. (a) In all actions involving fault of more than one party to the action, including third-party defendants and persons who have been released under AS 09.16.040, the court, unless otherwise agreed by all parties, shall instruct the jury to answer special interrogatories or, if there is no jury, shall make findings, indicating
> (1) the amount of damages each claimant would be entitled to recover if contributory fault is disregarded; and
> (2) the percentage of the total fault of all the parties to each claim that is allocated to each claimant, defendant, third-party defendant,

In striking down the existing scheme of joint and several liability, the voter initiative repealed AS 09.16, which had set out a contribution procedure that allowed defendants, after entry of judgment against them, to seek pro rata reimbursement from culpable third parties.[8] But the newly enacted statute providing for apportioned liability established no comparable procedure to allow named defendants to allocate fault to potentially responsible parties that the plaintiff had not sued.

We addressed this omission in *Benner v. Wichman*.[9] The defendant in *Benner* argued that the superior court erred by not instructing the jury that it could apportion liability for a construction accident among all those responsible for the plaintiff's injuries, including the plaintiff's employer and the general contractor, who were not parties to the lawsuit.[10] We rejected this broad reading of the statute, holding that "party" within the meaning of AS 09.17.080 was restricted to "parties to the action, including third party defendants and settling parties."[11] We also concluded—in the absence of any explicit statutory procedure—that equity demanded that defendants be allowed to mitigate their damages by filing third-party claims against other potentially responsible persons.[12]

The following year, we adopted Alaska Civil Rule 14(c) to establish the procedure that defendants could use for equitable apportionment of damages to third parties who had no direct liability to the defendant but were potentially responsible to the plaintiff. Rule 14(c) provides that a defendant, as a third-party plaintiff, may join any party whose fault may have been a cause of the damages claimed by the plaintiff.[13] The rule specifies that a judgment may be entered against the third-party defendant in favor of the plaintiff even in the absence of a direct claim.[14]

### C. The Superior Court Did Not Err in Holding that the Statute of Limitations for Tort Actions Is No Bar to Equitable Apportionment.

Alaska General Alarm argues that the superior court's ruling allowing Grinnell to im-

---

and person who has been released from liability under AS 09.16.040.

(b) In determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each party at fault, and the extent of the causal relation between the conduct and the damages claimed. The trier of fact may determine that two or more persons are to be treated as a single party if their conduct was a cause of the damages claimed and the separate act or omission of each person cannot be distinguished.

(c) The court shall determine the award of damages to each claimant in accordance with the findings, subject to a reduction under AS 09.16.040, and enter judgment against each party liable. The court also shall determine and state in the judgment each party's equitable share of the obligation to each claimant in accordance with the respective percentages of fault.

(d) *The court shall enter judgment against each party liable on the basis of several liability in accordance with that party's percentage of fault.*

(Emphasis indicates section amended by voter initiative.)

**8.** *See* 1988 Election Pamphlet for Initiative No. 87TOR2, § 2, prepared pursuant to AS 15.58.010.

**9.** 874 P.2d 949 (Alaska 1994).

**10.** *See id.* at 955.

**11.** *See id.* at 958.

**12.** *See id.* at 956–57. We explained:

The initiative did away with one category of claims—contribution. It did not purport to abolish all claims between defendants and potential third-party defendants.... Nor does the initiative prevent courts from vindicating duties that nonlitigants owe plaintiffs by authorizing joinder of those litigants. In the absence of contribution, we hold that equitable apportionment is available as a means of bringing other tortfeasors into the action.

*Id.* (Citations and footnotes omitted.)

**13.** Alaska R. Civ. P. 14(c) provides:

Equitable Apportionment. (c) For purposes of apportioning damages under AS 09.17.080, a defendant, as a third-party plaintiff, may follow the procedure of paragraph (a) to add as a third-party defendant any person whose fault may have been a cause of the damages claimed by the plaintiff. Judgment may be entered against a third-party defendant in favor of the plaintiff in accordance with the third-party defendant's respective percentage of fault, regardless of whether the plaintiff has asserted a direct claim against the third-party defendant.

**14.** *See id.*

plead it as a third-party defendant with potential liability to McIntire even though the statute of limitations had run was based on a misreading of *Benner* and a misapplication of Civil Rule 14(c). The company contends that it should not be liable to the plaintiff as a third-party defendant if the plaintiff cannot sue it directly.

The superior court's ruling was based on two premises: (1) our holding in *Benner* mandates that fault only be apportioned among parties to an action; and (2) under Civil Rule 14(c), a party joined for apportionment of fault is also liable to the plaintiff for damages. The superior court concluded on the basis of these authorities that a third party cannot be joined solely to reduce the percentage of fault attributable to a named defendant. Thus, the superior court held that equity demanded that liable defendants be permitted to sue third parties for apportionment of fault after the statute of limitations on the underlying claim has expired.

■ We agree that it was implicit in our holding in *Benner* that fault can only be apportioned under AS 09.17.080 to parties who may be liable to the plaintiff for money damages, including third-party defendants and settling parties.[15] Civil Rule 14(c) effectuates this purpose by allowing defendants to implead third-party defendants who then may become liable to the primary plaintiff.[16] Although AS 09.17.080 does not address the limitations period, construing the statute to require that defendants file third-party claims for apportionment within the statute of limitations governing the plaintiff's underlying claim would give plaintiffs exclusive control over which at-fault parties shared liability. This would defeat the initiative's purpose to allocate damages not to one named defendant but to all those at fault.[17] There is no express statutory language or

legislative history supporting this inequitable result.

1. *Allowing empty chair defendants would contravene Benner v. Wichman and the purpose of AS 09.17.080.*

■ In *Benner* we held—after noting that a defendant's right to contribution from other at-fault parties did not survive the Tort Reform Initiative—that "equity requires that defendants have an avenue for bringing in others who may be liable to the plaintiff."[18] To describe this remedy, we chose the term "equitable apportionment" as opposed to "equitable indemnity" to convey that we were vindicating not just the right of defendants to have damages apportioned in accordance with their fault, but the commensurate duty of responsible third parties to pay plaintiffs.[19] The purpose of limiting fault allocation to joined parties—more specifically, to parties potentially liable to the plaintiff, rather than "empty chair" defendants—was to ensure that fault was accurately litigated.[20] As explained in the commentary to the Uniform Comparative Fault Act, which we relied on in *Benner*, a fair apportionment of fault requires adversarial fact-finding:

> The limitation to parties to the action means ignoring other persons who may have been at fault with regard to the particular injury but who have not been joined as parties. This is a deliberate decision. It cannot be told with certainty whether that person was actually at fault or what amount of fault should be attributed to him, or whether he will ever be sued, or whether the statute of limitations will run on him, etc. An attempt to settle these matters in a suit to which he is not a party would not be binding on him. Both plaintiff and defendants will have significant incentive for joining available defendants who may be liable. The more parties

**15.** *See* 874 P.2d at 955–58.

**16.** *See* Alaska R. Civ. P. 14(c).

**17.** See *infra* note 42 and accompanying text.

**18.** 874 P.2d at 956.

**19.** *See id.* at 956 & n. 17.

**20.** *See, e.g., National Farmers Union Property and Cas. Co. v. Frackelton,* 662 P.2d 1056, 1060 (Colo.1983) ("By requiring the jury to apportion 100 percent of the negligence among the parties [and not to non-parties], the burden of persuading the factfinder to resolve the comparative negligence equation is shared equally between the plaintiffs and the tortfeasors who participate in the trial.").

joined whose fault contributed to the injury, the smaller the percentage of fault allocated to each of the other parties, whether plaintiff or defendant.[21]

The risk entailed in shifting blame to an "empty chair" is well-illustrated by the circumstances of this case: if the statute of limitations were a bar to Alaska General Alarm's liability and it were impleaded for purposes of fault allocation alone, Grinnell would have every motivation to blame Alaska General Alarm for McIntire's injuries. But Alaska General Alarm, facing no liability, would have little incentive to defend itself. The burden thus would fall on McIntire to demonstrate that Grinnell was at fault and that Alaska General Alarm was not. This burden shifting would encourage defense counsel to wait until the statute of limitations expired to join third parties, and would frustrate recovery by plaintiffs.[22]

This result could be avoided by holding that additional defendants cannot be joined for allocation of either fault or liability once the limitations period for the underlying cause of action has expired. But this solution would create its own unfairness. If a complaint is filed on the last day allowed by the statute of limitations, a defendant would as a practical matter have no opportunity to apportion fault to responsible third parties[23] —a result that we rejected as inequitable in *Benner*.[24] Other jurisdictions for the same reason have held that a defendant's right to contribution under joint and several liability should not be limited by the two-year statute of limitations for tort claims.[25]

Amicus curiae State of Alaska suggests that allowing late joinder of third-party defendants for purposes of allocating liability, rather than merely fault, is barred by language in AS 09.17.080 requiring the court to consider the nature of the conduct of each party *at fault*, but to award damages and enter judgment only against each party *lia-*

**21.** 874 P.2d at 958 n. 19 (quoting Unif. Comparative Fault Act § 2 cmt., 12 U.L.A. 50 (Supp. 1993)) (emphasis omitted). Alaska General Alarm argues that the reference in this comment to the statute of limitations evidences an awareness by the drafters of the Uniform Comparative Fault Act that the statute of limitations can expire before a person is joined as a "party." But we read the passage to refer to non-parties who—because they have no opportunity or incentive to litigate their defense—could be allocated fault without regard to the fact that the statute of limitations had run on the direct claim. Even if we accepted Alaska General Alarm's reading of this passage, its analysis fails because the uniform act allows for joint and several liability. Consequently, dismissal of a plaintiff's claim against one defendant on statute of limitations grounds would not result in the inequities discussed here. That plaintiff could recover from the remaining defendants, who would then have a year to sue the dismissed party for reimbursement. Unif. Comparative Fault Act § 2(d) & cmt., 12 U.L.A. 135–38.

**22.** Amici curiae The Defense Counsel of Alaska and State of Alaska note that this unfairness could be avoided by the plaintiff's decision to sue a third-party defendant within the statute of limitations. This analysis fails to address circumstances where the plaintiff, in spite of diligent discovery, is unaware of a potentially responsible party until it is identified by the defendant. Some states have addressed this problem by statute. *See, e.g.,* Iowa Code Ann. § 668.8 (1998) (filing of a petition under comparative fault chapter tolls the statute of limitations for the com-

mencement of an action against all parties who may be assessed any percentage of fault); Tenn. Code Ann. § 20–1–119 (1999) (if defendant alleges in answer that non-party caused or contributed to injury and plaintiff's cause of action is barred by the statute of limitations, plaintiff has 90 days to amend complaint or institute separate action against that non-party).

**23.** This is exactly what occurred in *Reeve v. Union Pacific Railroad Co. v. Jefferson*, 790 F.Supp. 1074 (D.Kan.1992). The federal district court, applying Kansas law, held that the statute of limitations for comparative implied indemnity claims begins to run when the underlying plaintiff's cause of action accrues. *Id.* at 1078. Because the plaintiff's claim was filed one day before the statute of limitations expired, the defendant was prevented from impleading other at-fault parties. *Id.* at 1079. Recognizing the harshness of this result, the court noted: "It is not this court's function to pass judgment on the propriety of state laws." *Id.*

**24.** *See* 874 P.2d at 956–57.

**25.** *See, e.g., Goldsberry v. Frank Clendaniel, Inc.*, 109 A.2d 405, 408 (Del.Super.1954) (legislature would not create right to contribution and then place it in power of the original plaintiff to decide whether it could be exercised); *Roehrig v. City of Louisville*, 454 S.W.2d 703, 704 (Ky.1970) (reason statute of limitations does not run from time of tort injury is so injured party cannot foreclose right to contribution by suing just before statute expires).

*ble.*[26] On this point we agree with the Supreme Court of Utah, which looked at similar language in its comparative fault statute and concluded that "the statutory scheme, taken as a whole, allows the court to consider the fault of any person, but to allocate fault only to plaintiffs, defendants, and [under the Utah statute] persons immune from suit."[27] Moreover, the language distinguishing between findings of fault and judgments based on liability was originally drafted by the legislature as part of a comparative fault statute that retained joint and several liability; consequently, it is unpersuasive evidence of the intent of the Tort Reform Initiative's drafters to allocate fault without liability.[28]

■ We thus conclude, as did the superior court, that under the comparative fault scheme at issue here third parties must be joined for purposes of allocating fault and liability, or not at all. Moreover, the limitations period governing the underlying claim should not bar the liability of third-party defendants to the plaintiff for their share of fault.[29] To hold otherwise would abandon the statute's stated purpose—apportioning liability equitably among at-fault parties[30]—in favor of a defense to liability that finds no support in the language or history of the statute and is generally disfavored by courts.[31]

2. *The history of the Tort Reform Initiative does not support applying the statute of limitations to actions to apportion liability to third parties.*

This conclusion does not require us to hold, as Alaska General Alarm and amici curiae suggest, that the Tort Reform Initiative "impliedly repealed" AS 09.10.070, the statute of limitations governing tort actions. In forwarding this argument, Alaska General Alarm and amici curiae assume that, unless impliedly or expressly repealed, this provision would necessarily govern the equitable apportionment remedy that we established in *Benner* and Rule 14(c). But this assumption is unwarranted.

Before the 1987 Tort Reform Initiative that led to passage of AS 09.17.080, the Alaska Uniform Contribution Among Joint Tortfeasors Act[32] provided that joint tortfeasors shared equally in their common liability to the plaintiff, rather than according to the comparative fault of each.[33] Under that system, which was repealed in 1989 by the Tort Reform Initiative, the defendant had one year from judgment or settlement of the plaintiff's claim to sue for reimbursement

---

**26.** The portions of AS 09.17.080 cited by the state provide:
> (b) In determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each *party at fault,* and the extent of the causal relation between the conduct and the damages claimed.
> (c) The court shall determine the award of damages to each claimant in accordance with the findings and enter judgment against each *party liable....*
> (d) The court shall enter judgment against each *party liable* on the basis of several liability in accordance with that party's percentage of fault.

**27.** *See Field v. Boyer Co., L.C.,* 952 P.2d 1078, 1081 (Utah 1998). The Utah court noted situations in which the conduct of an unknown tortfeasor—for example, an erratic driver—might be considered by the court in determining how to divide 100% of the liability between the plaintiff and defendant.

**28.** *Compare* former AS 09.17.080 (1986) *with* former AS 09.17.080 (1989). Only section (d) of the statute was amended by the Tort Reform Initiative.

**29.** A different balancing of interests may apply where the third-party defendant is immune from judgment for some reason other than the statute of limitations because in that instance a plaintiff could not recover from the third party regardless of the timing of the complaint.

**30.** *See infra* note 43 and accompanying text (text of 1988 Election Pamphlet for Initiative No. 87TOR2 prepared pursuant to AS 15.58.010 (Statement in Support)); *see also Vail v. Coffman Eng'rs, Inc.,* 778 P.2d 211, 213 (Alaska 1989) (the interpretation of a statute begins with an examination of the language of the statute construed in light of its purpose).

**31.** *See Lee Houston & Assocs., Ltd. v. Racine,* 806 P.2d 848, 854 (Alaska 1991) ("[A]lthough the defense of the statute of limitations is a legitimate one, it is generally disfavored by the courts.").

**32.** Former AS 09.16.010–.060 (1970).

**33.** *See Colt Indus. Op. Corp. v. Murphy Mfr., Inc.,* 822 P.2d 925, 934–36 (Alaska 1991).

from other culpable parties for any payment it made to the plaintiff in excess of its pro-rata share.[34] This rule was not peculiar to Alaska, but reflects the generally recognized view, endorsed by the Uniform Comparative Fault Act,[35] the Restatement,[36] and by virtually all jurisdictions, that third-party claims for contribution or indemnity are separate from underlying tort actions from which they arise:

> The rule generally recognized in most jurisdictions is that the cause of action for contribution or indemnity based upon tort is distinct from the cause of action for the underlying tort, and the time when the statute of limitations starts to run upon such cause of action is not when the tort is committed, but when the underlying claim, a judgment thereon, or a settlement thereof is paid or discharged.[37]

The traditional reason for applying a separate statute of limitations to actions for contribution or indemnity is that a defendant's cause of action against a potentially responsible third party does not accrue until there is a judgment or settlement on the primary action.[38] But despite the notion that such actions only accrue upon judgment, some jurisdictions with third-party contribution statutes allow or require defendants to litigate their contribution claims concurrently with the underlying tort claims, yet continue to apply a separate statute of limitations that is triggered by the date of settlement or judgment.[39]

The equitable apportionment remedy that we adopted in *Benner* and implemented in Civil Rule 14(c) bears a far closer relationship to these kinds of third-party claims than to the underlying tort actions. Although impleading third parties to litigate their pro-rata contribution under a joint and several liability regime and impleading third parties to apportion fault under a scheme of several liability result in different methods of allocating damages, the procedural distinctions between these remedies is largely semantic. In both cases the defendant, not the plaintiff, initiates the third-party claim, and at its root the claim is a mechanism for spreading damages.[40] And as shown above, Rule 14(c)'s procedure for apportioning damages under AS 09.17.080 cannot be distinguished from more traditional contribution and indemnity actions merely because it allows defendants to serve third-party complaints and litigate these claims before they technically "accrue"—that is, before judgment or settlement.

Moreover, we find no indication in the legislative history that the drafters of the Tort Reform Initiative intended to turn a third-party procedure well established in this state and the common law on its head.[41] As

---

34. *See* former AS 09.16.030(c) (1970) ("If there is a judgment for the injury or wrongful death against the tortfeasor seeking contribution, any separate action by him to enforce contribution must be commenced within one year after the judgment has become final by lapse of time for appeal or after appellate review."); *see also Criterion Ins. Co. v. Laitala*, 658 P.2d 112, 114 n. 3 (Alaska 1983) (action for contribution by defendant may be commenced within one year after judgment or post-judgment settlement has become final even if the statute of limitations has expired, citing former AS 09.16.030(c) (1970)).

35. *See* Unif. Comparative Fault Act § 5(c), 12 U.L.A. 145–46 (separate action to enforce contribution may be filed at any time within one year after judgment in the original underlying action).

36. *See* Proposed Final Draft of the Restatement (Third) of Torts § 33 cmt. k (1999) ("[A] person is not protected from contribution by the fact that the plaintiff would be precluded from recovery because of a statute of limitation.").

37. *See When Statute of Limitations Commences to Run Against Claim for Contribution or Indemnity Based on Tort*, 57 A.L.R.3d 867, 874 (1974) (citations omitted).

38. *See id.* at 873, 912–13 (citing cases for this proposition).

39. *See id.; see also* Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1448, at 388–89 (2d ed.1990).

40. Indeed, the draft Restatement (Third) of Torts recognizes that even under apportioned liability a defendant sued in an action in which fewer than all the relevant persons have been joined might be liable for more than its percentage of fault and thus might be entitled to "contribution." *See* Proposed Final Draft, Restatement (Third) of Torts § 33 cmt. f (1999).

41. *See Progressive Ins. Co. v. Simmons*, 953 P.2d 510, 516 (Alaska 1998) ("We shall look to the purpose indicated by the legislature in passage of an act in our effort to determine whether the new enactment is intended to repeal a prior one.").

Alaska General Alarm points out, the legislative history of AS 09.17.080 contains no mention of the effect of the Tort Reform Initiative on the statute of limitations. The scant legislative history demonstrates that the initiative's supporters were concerned almost exclusively with ensuring that defendants would be liable only for their share of fault.[42] The legislative history also reveals no trace of intent to apportion fault without liability. The statement in support reads in relevant part:

> If Ballot Measure No. 2 is passed, and *you do something wrong, you pay for it.* But you would not be forced to pay for something you didn't do—which could happen under present law.[43]

The legislative affairs agency summary also provides:

> The new law would tell the court to *enter judgment against each person at fault,* but only in an amount that represents that person's share of the fault.[44]

Yet, as discussed above and as we recognized in *Benner,* subjecting third-party apportionment claims to the statute of limitations for torts would virtually compel the apportionment of fault without liability.

Thus, although the ballot initiative undeniably repealed the statute of limitations governing contribution when it repealed the contribution statute itself, AS 09.16, it appears that voters repealed these provisions as superfluous—because a pure comparative fault regime rendered it theoretically unnecessary for defendants to seek post-judgment reimbursement, particularly given existing civil rules that generally permit liberal joinder of third parties.[45] Because merging distinct causes of action for tort and equitable apportionment of damages under a single statute of limitations would defeat the initiative's goal of allocating damages fairly among named responsible parties, we cannot assume that the voters intended this result.

Accordingly, we find no basis in law, reason, or precedent to conclude that an action commenced by a third-party complaint to apportion damages under AS 09.17.080, filed in accordance with Civil Rule 14(c), should be governed by AS 09.10.070, the statute of limitations governing the underlying tort claim—a distinct cause of action.[46]

■ In the present case, Grinnell filed its third-party complaint for apportionment of damages prior to judgment. Because third-party actions of this kind are traditionally deemed to accrue upon judgment or settlement, our conclusion that Grinnell's action is distinct from McIntire's underlying action in tort makes it unnecessary to decide what period of limitation might apply to an apportionment action filed after judgment or settlement. Here, the distinct nature of the causes provides a sufficient basis for reject-

---

42. As the ballot language explained:

> The initiative would make each party liable only for damages equal to his or her share of fault, and repeal the law concerning reimbursement from other parties.

1988 Election Pamphlet for Initiative No. 87TOR2 prepared pursuant to AS 15.58.010 (Ballot Language).

> The legislative affairs summary also states:
> Existing law now tells the court to enter judgment against each person at fault in an amount equal to the total liability of all persons at fault. Those at fault are required to share the total cost of the fault. The measure repeals that law.

*Id.* (Legislative Affairs Summary).

43. *Id.* (Statement in Support) (emphasis added).

44. *Id.* (Legislative Affairs Summary) (emphasis added).

45. *See* Alaska R. Civ. P. 14(a).

46. This conclusion is in harmony with Alaska Civil Rule 14(a) and (c), which, in authorizing a defendant to file a third-party complaint for purposes of apportioning damages under AS 09.17.080 "[a]t any time after commencement of the action," were intended to be neutral on the statute of limitations question. As Alaska General Alarm points out, when originally proposed, Civil Rule 14(c) limited the ability of a defendant to add a third-party defendant to situations in which the third-party defendant "may be wholly or partially liable to the plaintiff." In response to this proposal, comments were submitted to the court expressing concern that this language would preclude a defendant from impleading parties who were not liable to the plaintiff because of the statute of limitations or some other immunity from suit. To address this concern, the rule was changed to allow a defendant to implead for purposes of apportioning damages under AS 09.17.080 "any person whose fault may have been a cause of the damages claimed by the plaintiff."

ing Alaska General Alarm's claim that Rule 14(c) impermissibly created a substantive right by trumping the statute of limitations for torts.

## IV. CONCLUSION

The decision of the superior court denying Alaska General Alarm's motion for summary judgment is AFFIRMED.

COMPTON, Justice, not participating.